UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES SMITH,

        Plaintiff,

v.                           Case No. 8:08-cv-451-T-33EAJ

FRANK LOSAT, et al.,

        Defendants.
_____/

## ORDER

This cause comes before the Court pursuant to Defendant City of Tampa's Motion for Summary Judgment (Doc. # 54), filed on February 26, 2009. Plaintiff's response was filed on March 16, 2009 (Doc. # 60). Upon due consideration of the motion, response, and the record as a whole, the Court grants the City of Tampa's motion for summary judgment.

The City of Tampa's motion seeks summary judgment as to Counts I, II, and VIII. However, contemporaneously with the filing of its response to the City of Tampa's summary judgment motion, Plaintiff Frank Losat filed a stipulation of dismissal

as to Count VIII.[1]  Accordingly, the Court's analysis will address Counts I and II only.

**I.  Background**

In and prior to January 2003, Smith owned and operated a sign company known as Sign Depot.  (Doc. # 1 at 3).  On January 4, 2003, Smith contracted with Donna and Alan Mazzola to build a sign for their restaurant.[2]  (Doc. # 60-2).  The sign was to contain lighted block letters spelling out the name of the restaurant.  (Id.).  The contract contained a clause that read in pertinent part:

> Sign Depot has the right to hire outside sources, contractors or other companies in some parts of a job.  At times farming out work is done for an entire job. By you signing this contract, you are aware of farming out work by [Sign Depot] and will not interfere in the completion of a job because of this.  Also you will agree that you are responsible to check with [your] landlord or building owner and get permission to allow us to install a sign on the building.  If Sign Depot starts an order and your landlord says the sign is not allowed, you are

---

[1] Smith previously dismissed with prejudice his claims against Defendants Frank Losat, David Gee, as Sheriff of Hillsborough County, Hillsborough County Sheriff's Office, and William Darrow.  (Doc. ## 59, 61).  In addition, Smith reached a settlement with Defendants Donna Mazzola and Alan Mazzola through mediation, and the claims against the Mazzolas were dismissed without prejudice on May 28, 2009.  (Doc. ## 59 at 1; 64).

[2] Although the contract was executed on January 4, 2003, it was inadvertently dated January 4, 2002.  (Doc. ## 54 at 2; 60 at 2).

responsible to pay the entire balance of the sign you ordered.

(Id.).

The contract provided that the cost of the sign, including installation, was to be $3800. (Id.). The Mazzolas paid Smith a deposit of $1900 at the time the contract was signed and Smith cashed the check shortly thereafter. (Id.; Doc. # 54 at 3). According to the Mazzolas, Smith told them that the sign would be ready in three to four weeks. (Doc. # 35 at 6). The Mazzolas contacted Smith numerous times over the next several months and each time received promises that the sign would soon be done. (Id. at 6-7). Smith never produced the sign and never refunded the Mazzolas's deposit. (Id. at 7-10). In July 2003, the Mazzolas contracted with another company to fabricate and install their sign. (Id.).

On or about April 17, 2003, the Mazzolas filed a complaint with the Hillsborough County Sheriff's Office ("HCSO"), which was assigned to Detective Ralph Lazar. (Doc. ## 39 at 6-8; 48 at 1-2). Lazar contacted the State Attorney's Office and was advised that the matter was civil in nature, not criminal. (Doc. # 48 at 2). Lazar then reported the incident to the Hillsborough County Tax Collector's

Office.³ (Id.) The HCSO then closed the investigation. (Doc. # 54 at 3).

Several months later, the Mazzolas filed a complaint against Smith with the investigation bureau of the Hillsborough County Building Department. (Doc. # 40 at 4). Because the Mazzolas's address was located in the City of Tampa, the complaint was referred to the City of Tampa Construction Department. (Id.). On or about July 29, 2003, the complaint was assigned to William Darrow, an investigator with the City of Tampa Construction Department Investigation Bureau. (Doc. # 51 at 9-11).

As part of his investigation, Darrow spoke with Detective Lazar, the Mazzolas, and Smith. (Doc. ## 40 at 5; 43 at 117-120; 54 at 3). Darrow attests that Lazar provided him with a copy of Lazar's initial report. (Doc. # 40 at 5). In addition, Lazar advised Darrow that he had previously contacted the State Attorney's Office regarding the Mazzola's complaint and that he had been told that it was a civil matter. (Id.).

---

³ Lazar asserts that he contacted the Tax Collector's Office so they could investigate whether Smith was in compliance with licensing requirements. (Doc. # 39 at 9-10).

Smith's deposition testimony confirms that Darrow contacted him, advising Smith that he had not found a license on file for him and discussing the requirements for licensing. (Doc. # 43 at 118-119). In addition, Smith recalls that Darrow notified him about the Mazzolas's complaint and advised him that he wanted the Mazzolas to either get their sign or a refund of their money. (Id.).

After conducting his investigation, Darrow contacted the State Attorney's office and was advised by Assistant State Attorney Robert Petschow that, since the case involved a possible charge of construction-related fraud and theft involving an unlicensed contractor, the matter appeared to be criminal in nature.[4] (Doc. # 40 at 5-6). According to Darrow, Petschow told him to refer the case to the State Attorney if the Mazzolas's money was not returned or the work performed. (Doc. ## 40 at 5-6; 51 at 11). After the Mazzolas confirmed that they had not heard anything further from Smith, Darrow referred the matter to the State Attorney on August 8, 2003. (Doc. # 51 at 1-2).

---

[4] According to Darrow, Petschow told him that he did not remember a previous conversation with the HCSO regarding the Mazzolas's complaint against Smith. (Doc. # 51 at 11).

Darrow's Criminal Report Affidavit asserted probable cause to believe that Smith was in violation of Florida Statute § 489.127, contracting without a license, and Florida Statute § 812.014, grand theft. (Id. at 1). Darrow's probable cause statement reads as follows:

> Mr. [and] Mrs. Mazzola contracted with [Smith], doing business as "Sign Depot," to install a sign for their business which is a restaurant located at 10032 Cross Creek Center in Tampa. The transaction, however, took place at the Mazzola home located at 10201 Garden Alcove Dr., Tampa, Hillsborough County, Florida. The contract was for $3800, [and Smith] was given a deposit of $1900 on [January 4, 2003], which he cashed a short time later. [Neither] Suspect Smith, nor company, are licensed in the State of Florida in any capacity as a contractor per records check. [Smith] admitted to [Darrow] that he is not licensed. He also said that victims would receive their sign or refund of their $1900. As of this date, neither has occurred. Suspect Smith also refuses contact with [Darrow]. Refer also to [Hillsborough County Sheriff's Office] report 02-121035.

(Id. at 2).

The State Attorney filed a two-count information charging Smith with grand theft third degree and contracting without a license, and a capias for Smith's arrest was issued on September 19, 2003. (Doc. # 32-12 at 1). On October 28, 2003, Smith was arrested at his place of business by a Hillsborough County Sheriff's Deputy. (Doc. # 24 at 9). According to Smith, he was then driven in an unmarked car to

a gas station on Dale Mabry Highway in Tampa, Florida, where he was transferred to a marked City of Tampa police vehicle. (Id.; Doc. # 43 at 69). Smith was booked and released on $2,500 bond. (Doc. # 50 at 1). Smith's arrest report lists "TPD" as the arresting agency. (Id. at 2).

The Circuit Court for the Thirteenth Judicial District in and for Hillsborough County dismissed Count II of the information, acting in the capacity of a contractor without a license, upon motion of Smith. (Doc. # 32-10 at 1). The grand theft charge in Count I was nolle prossed by the State Attorney's Office in September 2003, based on insufficient evidence. (Id. at 2).

On February 19, 2008, Smith filed suit in state court against William Darrow, City of Tampa, Donna Marie and Alan Mazzola, Frank Losat, David Gee, and the HCSO (Doc. ## 1, 2). The case was removed to this Court on March 10, 2008. (Doc. # 1). Smith's Second Amended Complaint, filed on December 22, 2008, contains thirteen counts against the various Defendants for false arrest and imprisonment, violation of 42 U.S.C. § 1983, abuse of process, malicious prosecution, and breach of contract. (Doc. # 24 at 12-36). Smith has dismissed with prejudice all claims except Counts I and II against the City of Tampa, and Counts XII and XIII against the Mazzolas were

dismissed without prejudice pursuant to a mediated settlement. (Doc. ## 59, 61, 64). Thus, the only remaining claims in this case are the two counts against the City of Tampa, which are the subject of this Order.

The City of Tampa argues that it is entitled to summary judgment because Smith "cannot present evidence that demonstrates an unlawful restraint." (Doc. # 54 at 6). Smith argues that Smith's arrest was "unlawful and without probable cause to believe a crime had been committed." (Doc. # 60 at 6). Because the City of Tampa was "directly involved" in Smith's detention and arrest, Smith alleges that the City of Tampa is liable for false arrest and imprisonment. (Id. at 5).

## II. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a

grant of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996) (citing <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. <u>Hickson Corp. v. N. Crossarm Co.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be

true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

**III. Analysis**

The City of Tampa argues that summary judgment on the claims for false arrest and imprisonment is warranted because Smith's arrest was made pursuant to a facially valid capias and therefore his arrest and imprisonment were, by definition, not false. (Doc. # 54 at 7). In addition, it is argued that Smith cannot show that the City of Tampa participated in Smith's physical arrest. (Id.). Smith contends that the City of Tampa was directly involved in Smith's arrest and that

probable cause to arrest Smith did not exist. (Doc. # 60 at 5-7). The Court concludes that probable cause to arrest Smith did exist and, accordingly, summary judgment in favor of the City of Tampa is warranted.

Smith's claims for false arrest and imprisonment are brought pursuant to Florida Statute § 768.28. Florida law therefore governs the Court's analysis. However, as the Eleventh Circuit has noted, the standard for determining whether probable cause exists is the same under Florida and federal law. Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998). Probable cause to arrest exists if "a reasonable man would have believed [probable cause existed] had he known all of the facts known by the officer." Id. (citations omitted). "Although probable cause requires more than suspicion, it does not require convincing proof, and need not reach the same standard of conclusiveness and probability as the facts necessary to support a conviction." Durruthy v. Pastor, 351 F.3d 1080, 1088 (11th Cir. 2003) (internal citations omitted).

Under Florida law, "[t]he existence of probable cause constitutes an affirmative defense" and acts as an absolute bar to state claims for false arrest and imprisonment. Rankin, 133 F.3d at 1435. False imprisonment occurs when a person is "unlawfully restrained without color of authority."

-11-

Jackson v. Navarro, 665 So. 2d 340, 342 (Fla. 4th DCA 1995). In addition, "If there is legal process or due authority apart from it, the arrest is not 'false' and the action must be one of malicious prosecution." Id. (quoting William L. Prosser, Law of Torts § 119 (4th ed. 1971)). An arrest based on a capias precludes a claim for false arrest. Id.

Here, the arresting officers acted pursuant to a facially valid capias. The capias was issued by a court officer based on an information submitted by the State Attorney's Office. Thus, Smith cannot pursue a claim of false arrest and imprisonment against the City of Tampa.

Smith also argues that probable cause did not exist because Darrow, the investigator assigned to the case by the City of Tampa Construction Investigation Bureau, did not sufficiently investigate the matter before referring it to the State Attorney for prosecution. (Doc. # 60 at 8). While this allegation may constitute a valid basis for a malicious prosecution claim, it does not support a claim for false arrest.

Malicious prosecution "arises out of the wrongful commencement of a judicial proceeding," while false arrest occurs when a person is improperly restrained without "color of authority." Jackson, 665 So. 2d at 342; see also Erp v.

Carroll, 438 So. 2d 31, 40 (Fla. 5th DCA 1983) (distinguishing false arrest and imprisonment from malicious prosecution and declaring that "unless the defendant takes an active part in the service of the warrant issued as a result of the maliciously instituted criminal prosecution, his liability for the arrest is enforced only by way of greater damages for the malicious prosecution"). Thus, Smith's allegation that Darrow wrongfully instigated a criminal investigation does not give rise to a claim for false arrest.

Smith has not asserted a malicious prosecution claim against the City of Tampa, likely recognizing that under Florida law such a claim cannot be asserted against the City. Fla. Stat. § 768.28(9) (immunizing the state and its subdivisions from liability for the malicious acts of its employees while they are acting in the scope of their employment); Johnson v. State Dept. of Health & Rehab. Servs., 695 So. 2d 927, 930 (Fla. 2d DCA 1997) ("[Florida Statutes] [s]ection 768.28(9)(a) bars an action for malicious prosecution against the state or its subdivisions arising from the malicious acts of their employees").

Based on the foregoing, the Court finds as a matter of law that the City of Tampa is not liable for false arrest or imprisonment arising from Smith's October 28, 2003, arrest.

Therefore, the Court grants the City of Tampa's motion for summary judgment and dismisses the City of Tampa from this case with prejudice.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant City of Tampa's Motion for Summary Judgment (Doc. # 54) is **GRANTED.**

(2) Plaintiff's claims against the City of Tampa are **DISMISSED** with prejudice.

(3) The Clerk is directed to terminate any previously scheduled deadlines and pending motions and close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>28th</u> day of May 2009.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record